UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., a New Jersey corporation,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CAFECONLECHE INCORPORATED, a Washington corporation, d/b/a Club Sur; and FRANCISCO BONIFAZ CHAVEZ, and the marital community thereof,<br><br>　　　　　　　Defendants. | No. C20-449-RSM<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |

## I.　INTRODUCTION

This matter comes before the Court on Plaintiff Innovative Sports Management, Inc.'s Motion for Default Judgment against Defendants Cafeconleche Inc., d/b/a Club Sur, and the marital community of Francisco Bonifaz Chavez. Dkt. #18. On September 22, 2020, the Court granted Plaintiff's Motion for Default against Defendants for failure to file an answer or otherwise plead in defense of this action. Dkt. #16. Plaintiff now requests "an award of $10,000 in compensatory damages and an award of $10,000 in enhanced damages to deter piracy generally on its First Count, and $1,500 on Plaintiff's Third Count." Dkt. #18 at 18. Defendants

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 1

have filed a Response to this Motion, in part noting that Plaintiff cited to a missing declaration. Dkt. #20. Plaintiff then filed a praecipe with that declaration and an amended motion, Dkt. #22, as well as Motions to ensure the Court considers the praecipe, Dkts. #23 and #24. Having reviewed Plaintiff's Motion, the supporting documents, and the remainder of the record, the Court finds adequate bases for the entry of default judgment and a reduced award of damages.

## II.     BACKGROUND

The Court accepts the following well-pleaded allegations of Innovative Sports Management's Complaint as established fact. *See LHF Prods., Inc. v. Holmes*, 2018 WL 3742189, at *2 (W.D. Wash. Aug. 7, 2018) (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).

This case involves the broadcast of a Peru v. Iceland international friendly soccer game ("the Program") telecast nationwide on March 27, 2018. Dkt. #1 ("Complaint") at ¶ 12. Plaintiff is a commercial distributor and licensor of sporting events, including the Program. *Id.* at ¶ 14.

Pursuant to the contract that granted Plaintiff distribution rights to the Program, Plaintiff sub-licensed the rights to commercial establishments, in exchange for a licensing fee, so that they may publicly exhibit the Program at their establishment. *Id.* at ¶ 13. The commercial fee for an establishment the size of Defendants' Club Sur was $1,500. Dkt. #22-1 at 3.

Plaintiff alleges that on the night of the Program, Defendant Chavez directed or permitted the employees of his business to unlawfully intercept and broadcast Plaintiff's Program, or intentionally intercepted, and exhibited the Program himself. Dkt. #1 at ¶ 18.

Plaintiff attaches the affidavit of investigator Kenneth Kemppainen who went to Defendant Café Con Leche's Club Sur on the night of the soccer match. Dkt. #19 at 15. Mr. Kemppainen states that he paid no cover charge, entered the establishment, and observed the

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 2

Program on two televisions with approximately 15 to 20 patrons watching the match, some wearing jerseys. *Id*. at 15–16. Mr. Kemppainen stayed for only five minutes and made no observations of money being collected. *Id*.

After Default, Defendants filed a Response to contest this Motion. Mr. Chavez states, via declaration, that he invited "a limited number of friends and family to Club Sur to watch the Peru versus Iceland soccer match." Dkt. #21 at 1. He states that he paid $34.95 to DirecTV to access the match. He believed this entitled him to watch the match "along with a limited group of friends and family." *Id*. at 2. He claims ignorance of the requirement of paying a commercial fee. He explains that he did not personally advertise or promote the match in print or on the web, and that he "closed Club Sur to the general public." *Id*. According to Mr. Chavez, only 15-20 people attended at Club Sur, which has a 389-person capacity. *Id*. He says he did not charge a cover or premium on food and drinks, and the sales for the entire day were less than $400. *Id*.

On March 25, 2020, Plaintiff filed the instant case, alleging violations of 47 U.S.C. § 605, *et seq.*, 47 U.S.C. § 553, *et seq.*, and trespass of chattel. *See* Dkt. #1. Mr. Chavez states in his declaration that he decided not to answer Plaintiff's Complaint because he could not afford the legal fees required to litigate this case. *Id*. at 3.

Plaintiffs are asking for "an award of $10,000 in compensatory damages and an award of $10,000 in enhanced damages to deter piracy generally on its First Count, and $1,500 on Plaintiff's Third Count." Dkt. #18 at 18.

### III.  DISCUSSION

**A.  Legal Standard and Jurisdiction**

The Court has authority to enter a default judgment against Defendants based on the Clerk's entry of default, Dkt. #16, and pursuant to Federal Rule of Civil Procedure 55 and Local

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 3

Civil Rule 55. The Court has subject matter jurisdiction over Plaintiff's claims under the Federal Communications Act of 1934 pursuant to 47 U.S.C. § 605 and 28 U.S.C. §§ 1331. It also has personal jurisdiction over Defendants, residents of Washington. The Court has been provided sufficient evidence to determine liability and the amount of damages claimed herein, as required by Fed. R. Civ. P. 55(b)(2). *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Once the Court determines Defendants' liability, it must decide whether to exercise its discretion to enter a default judgment. In deciding whether to enter a default judgment, a court may consider seven factors set forth in *Eitel*: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Id.*

**B. Liability**

Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish . . . such intercepted communication to any person." 47 U.S.C. § 605(a). The Ninth Circuit applies Section 605 to communications transmitted by satellite. *See DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("[I]t is clear from the case law since the 1984 amendments [to the Federal Communications Act of 1934] that the 'communications' protected by § 605(a) include satellite television signals.").

Plaintiff initially brought this action under both 47 U.S.C. § 605 and 47 U.S.C. § 553 of the Federal Communications Act. Section 605 generally applies to interception of satellite transmissions while Section 553 generally applies to interception of cable network transmissions. *See J & J Sports Prods., Inc. v. Frei*, No. C12-0127-BLW, 2013 WL 3190685, at *2 (D. Idaho

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 4

June 21, 2013) ("To oversimplify, § 553 deals with theft of cable television communications, while § 605 deals with theft of satellite television communications."). While the Ninth Circuit has not specifically addressed whether a plaintiff may recover under both sections for a single act of piracy, this Court has previously concluded that a plaintiff may only recover under one. *See, e.g.*, *J & J Sports Prods., Inc. v. Lone Star Cafe & Pub*, No. C12-0764-RSL, 2013 WL 587662, at *1 (W.D. Wash. Feb. 14, 2013). Section 553 sets a lower limit on statutory damages, permitting a minimum recovery of $250 and maximum of $10,000, or up to $50,000 for willful violations. Section 605 permits a minimum recovery of $1,000 and maximum of $10,000, or up to $100,000 for willful violations. *Compare* 47 U.S.C. § 553(c)(3)(A)-(B) *with* 47 U.S.C. § 605(e)(3)(C)(i)-(ii).

This case clearly involved satellite television, as Defendants have admitted to paying for access to the Program through DirectTV. To establish a Section 605 violation, a plaintiff must show that it has a proprietary interest in the Program and that the defendant unlawfully intercepted, received, published, divulged, displayed, and/or exhibited the Program without plaintiff's authorization. *See* 47 U.S.C. § 605(a). Plaintiff has properly alleged the elements of a Section 605 violation: (1) Plaintiff held exclusive nationwide commercial distribution rights to the Program, and (2) Defendants unlawfully intercepted, received, published, divulged, and/or exhibited the Program at the time of its transmission at his commercial establishment.

Liability has been established here. Defendants have admitted to the underlying facts of displaying the Program at his commercial establishment without paying the applicable $1,500 fee. Defendants have admitted to not contesting liability as a strategic litigation decision. *See* Dkt. #20 at 2. What is contested is the reasonable amount of damages.

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 5

### C. Eitel Factors

The majority of the *Eitel* factors weigh in favor of entry of default judgment.

    1. <u>Prejudice to plaintiff</u>

Plaintiff would be prejudiced without entry of judgment because it would be left without legal remedy. *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("[P]rejudice exists where the plaintiff has no recourse for recovery other than default judgment.") (internal citations and quotations omitted). Here, Plaintiff has no other means to recover the licensing fee that it would have been owed under the terms of the sublicense agreement. This factor therefore favors entry of default judgment.

    2. <u>Substantive merits</u>

As explained above, the Court finds that Plaintiff has established Defendants' liability. The only remaining issue is the proper amount of damages.

    3. <u>Sufficiency of the complaint</u>

As explained above, Plaintiff's Complaint sets forth sufficient specific facts that establish a prima facie case under 47 U.S.C. § 605.

    4. <u>Sum of money at stake</u>

The sum of money at stake likewise favors default judgment. Plaintiff seeks damages in the total amount of $21,500 plus fees and costs. This amount is, in the opinion of the Court and given the circumstances of this case, "excessive" compared to amounts requested in other cases brought under Section 605. *See, e.g.*, *Joe Hand Promotions, Inc. v. Streshly*, 655 F. Supp. 2d 1136, 1136 (S.D. Cal. 2009) (finding proposed award of $100,875 for signal piracy "manifestly excessive under existing law"). This factor further favors entry of default of judgment if the court awards less than the amount requested. *J & J Sports Prods., Inc. v. Silva*, No. C17-0681-

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 6

MO, 2017 WL 5632659, at *4 (D. Or. Nov. 20, 2017)).  For the reasons set forth below, the Court denies the total amount of damages requested by Plaintiff.  Accordingly, the fourth *Eitel* factor also favors default judgment.

        5. <u>Possibility of a dispute concerning material facts</u>

The Court finds a very low possibility of a dispute concerning material facts, given the Response of Defendants and associated declaration confirm much of what Plaintiff alleges.

        *6.* <u>Probability that default was due to excusable neglect</u>

This factor is essentially irrelevant, as Defendants' default was due to a strategic decision to avoid the cost of litigation.

        7. <u>Policy favoring decisions on the merits</u>

This factor typically weighs against default judgment because cases "should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  Here, however, the Court feels that a decision is essentially being reached on the merits, given the Response from Defendants.

In sum, the majority of the *Eitel* factors favor default judgment.  Accordingly, the Court will grant default judgment against Defendants on Plaintiff's Section 605 claim.

**D. Damages**

Having concluded that Plaintiff is entitled to entry of default judgment against Defendants, the Court will now address the question of relief.  Plaintiff requests $10,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II), based on the loss of the $1,500 sublicensing fee.  *See* Dkt. #18 at 15.  Plaintiff also requests an award of enhanced damages in the sum of $10,000 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).  The Court maintains discretion in the amount of damages it awards.  *Machuca*, 2016 WL 5939750, at *5; *J & J Sports Prods., Inc.*

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 7

*v. Jurado*, 2011 WL 6153605, at *3 (E.D. Cal. Dec. 12, 2011). Here, based on Defendants' alleged conduct, the Court concludes that damages should be awarded, but at a reduced sum.

Plaintiffs alleging Section 605 claims may choose to seek either actual or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(I)-(II). For each violation, the statute provides for statutory damages of not less than $1,000 and not more than $10,000, as the court considers just. *Id.* The statute also authorizes additional statutory damages of not more than $100,000 if the court finds the violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). However, when determining the amount of damages awarded for signal piracy, courts must be careful to not overcompensate distributors and must ensure that the statutory award remains proportional to the violation. *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000); *see also Kingvision Pay–Per–View v. Lake Alice Bar,* 168 F.3d 347, 350 (9th Cir. 2009) (Encouraging entry of "a sanction that deters but does not destroy.").

The Court finds Plaintiff's request for statutory damages in the amount of the $10,000 excessive given the circumstances. There is no evidence Defendants hacked the signal or otherwise pirated the Program; the Court is convinced from the record that Defendants paid the individual rate for the Program rather than the commercial rate. To ensure that the statutory award remains proportional to the violation, the Court will reduce the award under 47 U.S.C. § 605(e)(3)(i)(II) to $3,000.

The Court concludes that Defendants did not commit the violation willfully or for the purposes of direct or indirect commercial advantage. This is based not only on the declaration submitted by Defendants after Default, but on the meager evidence submitted by Plaintiff. In determining willfulness of Section 605 violations, courts generally consider factors such as

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 8

"repeat violations, substantial unlawful monetary gains, significant actual damages to plaintiff, advertising, cover charges, or charging premium menu and drink prices." *Silva*, 2017 WL 5632659, at *5 (quoting *J & J Sports Prods. Inc. v. Miramontes*, No. C10-2345-PHX-FJM, 2011 WL 892350, at *2 (D. Ariz. Mar. 14, 2011)). Plaintiff offers no evidence that Defendants have had repeat violations or evidence to support the other aggravating factors.

In similar cases, where defendants have repeated violations but no other aggravating factors, courts have declined to award $10,000. *See, e.g.*, *Joe Hand Promotions, Inc. v. Hetemi*, No. 1:16-CV-00473-CWD, 2017 WL 2457150, at *7 (D. Idaho June 6, 2017) (Awarding $5,000 in additional damages for repeated violations by small establishment but no other aggravating factors); *Machuca*, 2016 WL 5939750, at *6 (Awarding $5,000 in enhanced damages for two prior violations). Accordingly, the Court finds enhanced damages unwarranted in this case.

The Court finds that damages for trespass to chattel are duplicative of the above award and declines to add to the $3,000 figure.

The Court notes that Plaintiff has filed a praecipe with a missing declaration. Dkt. #22. The Court has reviewed that declaration in ruling on this Motion. Plaintiff has also moved to re-note the instant Motion, Dkt. 23, and to file an Amended Motion for Default Judgment correcting citations to the missing declaration, Dkt. #24. The Court finds that these Motions are essentially moot as the Court has reviewed all pertinent material, and that granting these Motions would have the potential of further driving up legal costs in this case. Accordingly, those Motions will be denied as moot.

### IV.   CONCLUSION

The Court, having reviewed the relevant briefing and the remainder of the record, finds adequate bases for default judgment. Accordingly, the Court hereby finds and ORDERS:

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 9

1) Plaintiff's Motion for Default Judgment, Dkt. #16, is GRANTED IN PART.  Plaintiff is awarded statutory damages in the amount of $3,000.

2) Plaintiff's Motions, Dkts. #23 and #24, are DENIED AS MOOT.

3) No later than 21 days from the date of this Order, Plaintiff may file a supplemental motion for attorney's fees, limited to six (6) pages, and supported by documentary evidence reflecting the amount of fees sought.  Plaintiff shall note this Motion for consideration pursuant to LCR 7(d).  Defendants may file a response brief limited to six (6) pages.  No reply brief is permitted.

4) This award amount shall accrue interest pursuant to 28 U.S.C. § 1961.

DATED this 14th day of April, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT - 10